UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| SUSIE R.,[1] | Case No. 1:21-CV-00133-DKG |
| Petitioner, | |
| v. | **MEMORANDUM DECISION AND ORDER** |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security Administration,[2] | |
| Respondent. | |

## INTRODUCTION

Pending before the Court is Susie R.'s Petition for Review of the Commissioner's denial of social security benefits filed on March 22, 2021. (Dkt. 1.) The Court has reviewed the Petition, the parties' memoranda, and the administrative record (AR). For the reasons that follow, the Court will affirm the decision of the Commissioner.

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Kilolo Kijakazi is substituted for Andrew Saul pursuant to Federal Rule of Civil Procedure 25(d). Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021.

**BACKGROUND**

On August 10, 2018, Petitioner filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income. (AR 13.) Both applications allege disability beginning on January 1, 2007. (AR 13.) The alleged onset date was amended to June 18, 2018. (AR 13, 33.) Petitioner meets the insured status requirements through December 31, 2023. The applications were denied initially and on reconsideration.

A hearing was conducted on March 9, 2020, before Administrative Law Judge (ALJ) Christel Ambuehl. After considering testimony from Petitioner and a vocational expert, on March 31, 2020, the ALJ issued a written decision finding Petitioner not disabled. (AR 13-22.) The Appeals Council denied Petitioner's request for review, making the ALJ's decision final. *See* 42 U.S.C. § 405(h). Petitioner timely filed this action seeking judicial review of the ALJ's decision. (Dkt. 1.) The Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

At the time of the alleged disability onset date, Petitioner was forty-five years of age. (AR 20.) Petitioner is a high school graduate and completed training as a certified nursing assistant. (AR 20.) Petitioner has past relevant work experience as a certified nursing assistant, laundry worker, and commercial cleaner. (AR 20.) Petitioner claims she is unable to work primarily due to spinal stenosis, back problems, degeneration, arthritis in sine, and chronic pancreatitis. (AR 283.)

**THE ALJ DECISION**

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential process in determining whether a person is disabled or continues to be disabled within the meaning of the Social Security Act (SSA). *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1594; 20 C.F.R. §§ 416.920(a)(4)(i)-(v), 416.994.

Here, at step one, the ALJ found Petitioner had not engaged in substantial gainful activity since the alleged onset date. (AR 15.) At step two, the ALJ determined Petitioner suffers from the following medically determinable severe impairments: degenerative disc disease of the lumbar spine, lumbar post-laminectomy syndrome, and lumbar radiculopathy. (AR 16.) The ALJ further concluded Petitioner's pancreatitis, constipation, malnutrition, insomnia, and restless leg syndrome were not severe impairments. At step three, the ALJ determined that, through the date last insured, Petitioner did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (AR 16.)

The ALJ next found Petitioner retained the residual functional capacity to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a); 416.967(a), with certain limitations. (AR 16-17.)[3] The ALJ concluded Petitioner can lift and carry ten pounds

---

[3] Sedentary work is defined by the regulations as work involving "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small

occasionally and less than ten pounds frequently; sit for six hours, and stand and/or walk for two hours total in an eight-hour workday; push and pull with no limits except as limited by lifting and carrying limits; occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds; and frequently balance, and occasionally stoop, kneel, crouch, and crawl. Further, Petitioner can tolerate occasional exposure to weather, extreme heat, extreme cold, wetness, and vibration; and can tolerate occasional exposure to hazards. (AR 17.)

At step four, the ALJ concluded Petitioner is unable to perform her past relevant work as a certified nursing assistant, laundry worker, and commercial cleaner. (AR 20.) Relying upon testimony from the vocational expert, the ALJ concluded at step five that jobs exist in significant numbers in the national economy that Petitioner can perform given her age, education, work experience, and RFC, such as: weight tester, order clerk, and sorter/inspector. (AR 21.) The ALJ therefore determined Petitioner is not disabled from June 18, 2018, through the date of the decision March 31, 2020. (AR 21.)

## ISSUES FOR REVIEW

1.  Whether the ALJ properly assessed Petitioner's subjective symptom statements?

2.  Whether the ALJ properly considered the medical opinions and satisfied any need to develop the record?

3.  Whether the ALJ's RFC determination is supported by substantial evidence?

---

tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a). The ALJ's written decision contains a typographical error to the subsection of the regulations defining sedentary work. (AR 16.) The error is noted here only for clarification of the record, it has no effect on the substance of the decision or the Court's review.

## STANDARD OF REVIEW

The Court must uphold an ALJ's decision unless: 1) the decision is based on legal error, or 2) the decision is not supported by substantial evidence. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla, but less than a preponderance of evidence. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

In making its determination, the Court considers the administrative record as a whole, weighing both the evidence that supports, and the evidence that does not support, the ALJ's conclusion. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). The Court considers only the reasoning and actual findings identified by the ALJ and may not affirm for a different reason or based on post hoc rationalizations attempting to infer what the ALJ may have concluded. *Id.* at 1010; *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009).

If the ALJ's decision is based on a rational interpretation of conflicting evidence, the Court must uphold the ALJ's finding. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). The Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999). The Court will not reverse the ALJ's decision if it is based on harmless error, which exists where the error is "inconsequential to the ultimate nondisability determination, or if despite the legal error, the agency's path may reasonably be discerned." *Brown-Hunter v. Colvin*,

806 F.3d 487, 492 (9th Cir. 2015) (internal marks and citations omitted); *see also Molina v. Astrue*, 674 F.3d 1104, 1117–1122 (9th Cir. 2012).

## DISCUSSION

### 1.    Petitioner's Symptom Statements

Petitioner argues the ALJ erred in evaluating her subjective symptom statements by mischaracterizing certain facts and relying on tangentially related activities of daily living as bases for dismissing her statements. (Dkt. 26, 29.) Respondent maintains the ALJ provided legally sufficient reasons for discounting Petitioner's statements. (Dkt. 28.)

### A.    Legal Standard

The ALJ engages in a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (quoting *Garrison*, 759 F.3d at 1014-15; 20 C.F.R. § 404.1529 (Mar. 27, 2017)). When doing so, "the claimant need not show that [his or] her impairment could reasonably be expected to cause the severity of the symptom [he or] she has alleged; [he or] she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ may discredit the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. *Trevizo*,

871 F.3d at 678; *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010). It is "not sufficient for the ALJ to make only general findings; he [or she] must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). These reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).

When evaluating the intensity and persistence of symptoms, the ALJ must consider all of the evidence in the record. *See* SSR 16-3p (March 16, 2016), 2016 WL 1119029 at *1-2.[4] The ALJ is directed to examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id*. at *4. That a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it. *Smolen*, 80 F.3d at 1285.

The Commissioner recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that

---

[4] The Commissioner superseded SSR 96-7p governing the assessment of a claimant's "credibility" with SSR 16-3p, which eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to evaluate the record as a whole. *Trevizo*, 871 F.3d at 679 n. 5.

precipitate and aggravate symptoms, medications and treatments used, and other methods

used to alleviate symptoms; (2) medical source opinions, statements, and medical reports

regarding the claimant's history, treatment, responses to treatment, prior work record,

efforts to work, daily activities, and other information concerning the intensity,

persistence, and limiting effects of an individual's symptoms; and (3) non-medical source

statements, considering how consistent those statements are with the claimant's

statements about his or her symptoms and other evidence in the file. *See* SSR 16-3p.

### B.    Petitioner's Symptom Statements and Testimony

Petitioner completed a functional report dated September 20, 2018, (AR 314-333.)

Petitioner reports she is unable to stand, sit, and walk for very long due to chronic pain in

her spine. Petitioner states she avoids most postural movements and lifting anything over

ten pounds because it causes severe pain even with the pain medications and other

treatments. Petitioner reports she can only stand for twenty minutes and can walk for only

thirty to forty-five minutes.

When her pain is "bad," Petitioner states she is not able to perform her activities of

daily living, requires assistance, and does not go out in public. Petitioner reports that she

cares for her small dog with the help of her roommate. Petitioner attends to her personal

care needs, but needs extra time and assistance to do so. If she is up to it, Petitioner will

go grocery shopping once or twice a week, check mail, stop by a park where she and her

dog walk a little bit or she will sit on a bench. During the day, Petitioner will mainly

watch television, crochet, read, visit with family members, and prepare simple meals.

During the hearing, Petitioner testified her back pain was then-presently at an

eight or nine out of ten and was aggravated by bending, twisting, lifting, and stairs. (AR 39-40.) She stated her mother and son assist with house cleaning, moving Petitioner out of bed or a bath, and caring for Petitioner's eight-month-old granddaughter.

### C.    Analysis of the ALJ's Decision

In the written decision, the ALJ considered Petitioner's subjective symptom statements, concluding that, although Petitioner's medically determinable impairments could reasonably be expected to cause the alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of these symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 17-18.) The ALJ summarized the medical records and then concluded that:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent. The claimant did have ongoing back pain complaints, but also appeared stable on her medications as she had few acute exacerbations of her pain. She also had normal gait noted, and even when she had an antalgic gait, she was able to ambulate without assistance (14F). Furthermore, she declined surgery due to her being the sole guardian of her granddaughter who had acute medical needs, which she stated kept her busy and more active than usual (14F). She also appeared generally satisfied with the relief provided by her pain medications, which she remarked allowed for increased functioning at home (2F/13). The claimant also reports being able to drive, shop, cook simple meals, and also takes care of her young granddaughter (6E and 14F).

(AR 19.) The Court finds the ALJ properly considered Petitioner's symptom statements and provided specific, clear and convincing reasons for discrediting Petitioner's statements about the severity of her symptoms.[5] The ALJ gave two reasons for rejecting

---

[5] Respondent argues the record contained "some affirmative evidence of malingering,"

Petitioner's symptom testimony: 1) inconsistency with the evidence in the record; and 2) inconsistency with activities of daily living. The Court will discuss each reason in turn below.

###     i.     Evidence in the Record

In general, "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can be "specific and substantial reasons that undermine ... credibility." *Morgan v. Comm'r Soc. Sec. Admin*., 169 F.3d 595, 600 (9th Cir. 1999). While subjective symptom "testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's [symptoms] and [their] disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider"); 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

---

and, therefore, clear and convincing reasons were not required for the ALJ to discount Petitioner's statements. (Dkt. 28 at 3-4.) In support of this argument, Respondent cites a treatment note dated July 30, 2019, quoted by the ALJ at step two, where Petitioner was seen for syncope, unknown collapse, and abdominal symptoms. (AR 16) (quoting AR 4594) ("Pt recently applied for disability, do get the sense she may be malingering. MD notified."). However, the ALJ did not identify the July 30, 2019 encounter with the treatment provider as affirmative evidence of malingering. Nor did the ALJ rely on or refer to the July 30, 2019 treatment note anywhere in her discussion of Petitioner's statements. Rather, Respondent's argument is a *post hoc* rationalization which the Court will not consider. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [she] did not rely."); *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006) (The Court cannot affirm the ALJ's decision on grounds not invoked by the Commissioner.). Regardless, the suggestion of malingering does not change the Court's conclusions stated herein.

Here, the ALJ first discredited Petitioner's symptom statements because the record revealed her back pain was controlled with pain medication. (AR 19.) The ALJ accurately summarized the medical records from 2017 through 2020, and then concluded that while Petitioner did have ongoing back complaints, she also appeared "stable on her medications as she had few acute exacerbations of her pain." (AR 18-19.) The ALJ noted Petitioner had normal gait and, even where antalgic gate was observed, she was able to ambulate without assistance. Further, the ALJ stated Petitioner declined surgery due to being the sole guardian for her grandchild, and that Petitioner "appeared generally satisfied with the relief provided by her pain medications," which allowed for increased functioning. (AR 19.)

Petitioner disagrees with the ALJ's characterization of the evidence and offers an alternative interpretation. Having carefully reviewed the records, the Court finds the ALJ accurately summarized the records and that the ALJ's conclusion is supported by substantial evidence. Petitioner takes issue with the ALJ's use of the word "stable" to describe the effectiveness of her pain medication. However, the medical records consistently reported that pain medications where helpful and effective in treating Petitioner's ongoing complaints of chronic pain and allowed for increased functioning. Further, the ALJ addressed all of the records reporting both that Petitioner was able to ambulate normally at times and, at other times, presented with antalgic gait but remained able to ambulate without assistance. (AR 18-19.)

Second, the ALJ discredited Petitioner's statements of disabling limitations as inconsistent because she "declined surgery due to her being the sole guardian of her

granddaughter who has acute medical needs, which she stated kept her busy and more active than usual." (AR 19.) Petitioner cites error, arguing her inability to obtain surgery was also due to lack of funds which cannot be the basis for denying benefits. (Dkt. 26 at 10-11.) The Court finds the ALJ's conclusion is supported by the record.

The ALJ noted the records reporting Petitioner declined alternative treatments due to the lack of insurance in 2017 and 2018. (AR 18.) That was consistent with Petitioner's testimony during the hearing stating she did not pursue a fusion surgery in 2018 due to lack of insurance "at that time." (AR 38-39.) In the records from 2020, however, Petitioner did not cite finances as the reason for not pursuing surgery. Rather, Petitioner told her treatment providers in 2020 that she wanted to "wait to consider additional treatment options until she settles into caring for her grandchild," for whom she was the "sole caregiver," which resulted in greater activity and aggravation of her low back pain. (AR 4621, 4624, 4628, 4630.) During the hearing, Petitioner testified that she would proceed with back surgery if she did not have to care for her granddaughter. (AR 44-45.)

These records substantially support the ALJ's conclusion that Petitioner's declination of surgery due to being the sole guardian of her granddaughter was inconsistent with her symptom statements. (AR 19.) Petitioner reported to her treatment providers that she was the "sole caretaker" of her granddaughter, with no mention of assistance from others, which made her busy and more active causing aggravation of her back pain. Consequently, Petitioner's Percocet prescription was increased. (AR 4624.) In contrast, Petitioner's testimony represented that she received significant assistance from her mother and son to care for her grandchild, without whom Petitioner stated she could

not provide care for her granddaughter or herself. (AR 42-45) (stating most of the time she would lie down on the couch with her granddaughter by her side). Thus, Petitioner's statements to treatment providers that she had worsening pain due to increased activity as the sole caretaker necessitating an increase in pain medication, but a desire to delay surgery, is in conflict with her testimony that she received significant help for the care of her grandchild and that she was unable to get out of bed and care for herself. (AR 17-19.) This inconsistency was a substantial basis to discredit Petitioner's symptom statements.

Importantly, the ALJ did not discredit or deny benefits based on Petitioner's inability to pay for treatment. Rather, the ALJ accurately pointed out that Petitioner's election to delay surgery in favor of continuing pain medications that were consistently reported to be effective so that she could care for her granddaughter, was inconsistent with her statements of disabling limitations and inability to function. This is particularly true given Petitioner's statements that her caretaking role required her to be more active than usual which aggravated her back pain, but she continued to report effective relief from pain medication. (AR 4628) ("Pain medication helps me perform Childcare, [and] Care for yourself."). Based on this record, the Court finds the ALJ's determination that Petitioner's statements were inconsistent is supported by substantial evidence.

### ii.    Activities of Daily Living

Daily living activities may provide a basis for discounting subjective symptoms if the claimant's activities either contradict his or her testimony or meet the threshold for transferable work skills. *See Molina*, 674 F.3d at 1112-13 ("Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's

testimony to the extent that they contradict claims of a totally debilitating impairment.");
*Orn*, 495 F.3d at 639. The Court finds the ALJ properly rejected Petitioner's testimony as
inconsistent with her daily activities.

The ALJ found Petitioner's daily activities conflicted with the severity of the
symptoms and limitations endorsed. The ALJ pointed to Petitioner's reports of being able
to drive, shop, cook simple meals, and care for her young granddaughter. (AR 19.)
Petitioner argues her daily activities were limited to times when she was "up to it" and
that she required assistance from her mother and son. (Dkt. 26 at 11-12.) The ALJ's
discussion of Petitioner's statements accurately reflects that she received assistance from
family members and that her daily activities were limited by pain. (AR 17.) Nevertheless,
the ALJ's conclusion that Petitioner's daily activities were inconsistent with the severity
of her symptom statements is supported by substantial evidence when considering the
entire record, as discussed by the ALJ in the written decision.

Petitioner's pain complaints were consistent throughout the medical records with
few acute exacerbations, as was the effectiveness of her pain medications reported in the
medical records, which included the time period prior to and after she concluded
working. Further, Petitioner retained the ability to ambulate without assistance and
perform daily activities at a level demonstrating her functional ability was greater than
represented in her statements. For these reasons, the Court finds the ALJ's conclusion
that Petitioner's symptom statements were inconsistent with her reported daily activities
is supported by substantial evidence, and was a proper basis to discredit Petitioner's
testimony.

### D.     Conclusion

Based on the foregoing, the Court finds the ALJ articulated specific, clear and convincing reasons to discredit Petitioner's symptom statements. The ALJ discussed particular symptoms and limitations, cited specific records, and identified particular inconsistencies between Petitioner's alleged limitations and the evidence in the record. Substantial evidence supports the ALJ's conclusion that Petitioner's subjective limitations are inconsistent with the evidence in the record and Petitioner's daily activities. Where "the ALJ's credibility finding is supported by substantial evidence in the record, [the Court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). This is true even where evidence exists to support more than one rational interpretation. *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Lewis v. Apfel*, 236 F.3d 503, 509 (9th Cir. 2001).

## 2.     Medical Opinion Evidence

Petitioner argues the ALJ erred in evaluating the medical opinions of Ann Cordum, M.D., and Ryan Hodges, PA-C, and failing to develop the record. (Dkt. 26, 29.) Respondent asserts the ALJ properly considered the medical opinion evidence as required by the regulations and had no duty to develop the record further. (Dkt. 28.)

### A.     Legal Standard

New regulations governing an ALJ's evaluation of medical opinion evidence apply to claims filed on or after March 27, 2017. *See* Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. Under the new regulations, the ALJ is no longer required to give

deference to any medical opinion, including treating source opinions. *Id*.; *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (ALJs no longer need to "provide 'specific and legitimate reasons' for rejecting a treating or examining doctor's opinion."). Instead, the ALJ evaluates the persuasiveness of the opinions based on several factors. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). These are: supportability, consistency, relationship to the claimant, specialization, and other factors. 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The most important factors in the evaluation process are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

"Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant ... objective medical evidence.'" *Woods*, 32 F.4th at 791-792 (quoting 20 C.F.R. § 404.1520c(c)(1)); *see also* 20 C.F.R. § 416.920c(c)(1). "Consistency means the extent to which a medical opinion is 'consistent ... with the evidence from other medical sources and nonmedical sources in the claim.'" *Id*. (quoting 20 C.F.R. § 404.1520c(c)(2)); *see also* 20 C.F.R. § 416.920c(c)(2).

Under this framework, the ALJ is required to articulate how persuasive they find the evidence and explain how the supportability and consistency factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ may, but is not required to, explain how the other persuasive factors in paragraphs (c)(3) through (c)(5) were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how the other persuasive factors were considered. 20 C.F.R. §§

404.1520c(b)(3), 416.920c(b)(3). The ALJ's persuasiveness determination under the revised regulations must be supported by substantial evidence. *See Woods*, 32 F.4th at 787 ("Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence.").

In fashioning a claimant's RFC, the ALJ must consider all relevant evidence in the record, including medical records, and "the effects of symptoms, including pain, that are reasonably attributable to the medical condition." *Robbins v. Soc. Sec. Admin.* 466 F.3d 880, 883 (9th Cir. 2006) (citation omitted). The ALJ is not obligated to discuss every piece of evidence when interpreting the evidence and developing the record, or discuss every word of a medical opinion or include limitations not assessed by a medical source. *Edwin C. v. Kijakazi*, No. 5:20-cv-2478-MAR, 2021 WL 7286046, at * 6 (C.D. Cal. Nov. 19, 2021) (citing *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003)). "However, the ALJ must discuss significant and probative evidence that is contrary to the ALJ's findings and explain why it has been rejected." *Id.* (citing *Robbins*, 466 F.3d at 883; *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (the ALJ must discuss significant and probative evidence and explain why it was rejected)).

### B.     Ann Cordum, M.D.

Cordum, a state agency consultant, examined Petitioner's medical records and issued disability determinations dated February 7, 2019, concluding Petitioner sustained the capability to perform work at the light exertional level based on her impairments and back pain. (AR 75, 78, 80, 89-91.) Cordum found Petitioner could occasionally lift and/or carry twenty pounds, and could frequently lift and/or carry ten pounds; could stand about

six hours and sit for about six hours during a workday; and had some postural and environmental limitations. (AR 76-78, 87-89.)

The ALJ found Cordum's determinations persuasive, and discussed the supportability and consistency factors. (AR 19.) The Court finds the ALJ properly evaluated Cordum's opinion as required by the regulations, and the ALJ's findings are supported by substantial evidence.

As to supportability, the ALJ stated "though non-treating and non-examining, the assessment is based on a review of the available medical record and a comprehensive understanding of agency rules and regulations. The opinion is also well supported by a thorough discussion of the evidence." (AR 19.) The ALJ's finding of supportability is consistent with substantial evidence in the record. Cordum's report discussed the medical records from May 7, 2018, just prior to the alleged onset date, to January 24, 2019. (AR 78-79.) Cordum noted the records reported Petitioner's ongoing complaints of back pain and contained medical findings of mildly reduced range of motion, but that she ambulated with no issues. Further, Cordum's RFC explanation observed that the records show Petitioner continued to get relief with medications.

As to consistency, the ALJ stated "[t]he limitation regarding her postural activities is consistent with the claimant's diminished lumbar range of motion and complaints of difficulty with postural activities. The ability to perform some limited postural activities is also consistent with the claimant's ability to drive, to go shopping, and her ability to ambulate independently. The environmental limitations are also consistent with the claimant's possible medication side-effects and occasional antalgic gait." (AR 19.)

Further, as discussed below, the ALJ found Cordum's opinion inconsistent with the opinion of Hodges, which the ALJ concluded was unpersuasive. This, the Court finds, properly addressed the consistency factor and the AJL's findings are supported by substantial evidence.

### C.     Ryan Hodges, PA-C

Hodges completed a physical functional assessment dated August 8, 2019. (AR 1615-1620.) Hodges opined that Petitioner could occasionally lift and/or carry up to twenty pounds occasionally, sit for one hour and stand/walk for five hours during a workday, had some manipulative limitations, could never perform any postural activities, and could never tolerate exposure to any environmental conditions with the exception of occasional driving. Hodges concluded Petitioner was able to engage in all of the daily activities listed on the form, except that she should not travel more than five miles without someone to assist her. (AR 1620.) Hodges explained the reasons for his findings were Petitioner's chronic back and joint pain, hypotension, and anxiety.

The ALJ found Hodge's opinion unpersuasive for three reasons. (AR 19.) First, because Hodges did not regularly treat Petitioner for her back issues. Second, the "extreme limitations are inconsistent with her exams which reveal an ability to ambulate independently, along with her reporting of being able to shop, drive, perform some simple cooking, and being the sole caretaker for her grandchild with acute medical needs. Third, the limitations are inconsistent with the opinion of Cordum. The Court finds the ALJ properly evaluated Hodges' opinion and discussed the supportability and consistency factors as required by the regulations.

**ORDER - 19**

As to supportability, the ALJ noted that Hodges was not Petitioner's regular treatment provider for her back issues. Hodges treated Petitioner on October 15, 2018 for left upper arm muscle pain, due to overuse, and on June 24, 2019 for constipation. (AR 4514-4524.)[6] However, Petitioner's back pain was treated by other providers. The ALJ's conclusion in this regard is supported by the record and was a proper basis for the ALJ to find Hodges' opinion concerning Petitioner's physical limitations due to back pain was unsupported and unpersuasive.

As to consistency, the ALJ observed that the limitations opined by Hodges were inconsistent with the exam records showing an ability to ambulate independently, and Petitioner's own statements of her ability to engage in daily activities and care for her granddaughter. Further, the ALJ found Hodges' opinion inconsistent with that of Cordum, which the ALJ found persuasive. The Court finds the ALJ's conclusion and explanation of the consistency factor are reasonable and supported by substantial evidence. As discussed herein, the ALJ's conclusions that Petitioner's daily activities establish her ability to function consistent with the RFC and that Cordum's opinion is persuasive are supported by substantial evidence. Thus, these were proper bases for the ALJ to find Hodges' opinion inconsistent and unpersuasive.

### D.    Duty to Develop the Record

"An ALJ's duty to develop the record further is triggered only when there is

---

[6] Hodges appears to have also treated Petitioner for anxiety during the time period prior to the alleged onset date. (AR 4514.) The Court notes this only for purposes of completeness. The records from the prior time period were not relevant to the ALJ's determination or the Court's review.

ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020); *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). However, the ALJ's duty to develop the record cannot be used to shift the burden of proving disability to the ALJ. *See Mays*, 276 F.3d at 460. The burden to present evidence of disability remains on Petitioner. 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 20 C.F.R. §§ 404.1520(a), 416.920(a) ("[Y]ou have to prove to us that you are...disabled...."); 20 C.F.R. §§ 404.1512, 416.912 ("In general, you have to prove to us that you are blind or disabled. You must inform us about or submit all evidence known to you that relates to whether or not you are blind or disabled.").

Here, Petitioner has not demonstrated the record was ambiguous or inadequate to allow for proper evaluation such that the ALJ was required to further develop the record. The record before the ALJ contained Petitioner's complete treatment records, as counsel conceded, and no missing records or inconsistencies were noted. (AR 31.) The ALJ summarized the evidence in the record spanning the relevant time period, 2017 through 2020, and found, upon that record, that Petitioner had not established she was disabled. (AR 18-21.) As discussed herein, the ALJ's determination is supported by substantial evidence.

Petitioner did not submit any medical opinion establishing disabling functional limitations and has not identified any evidence that was not considered by the ALJ. 42 U.S.C. § 423(d)(5)(A) (The burden to present evidence of disability remains on

Petitioner.); 20 C.F.R. §§ 404.1520(a), 416.920(a). As discussed above, the ALJ properly

evaluated Hodges' opinion concerning Petitioner's functional limitations related to her

back pain and found it unpersuasive. The ALJ reasonably relied on the opinion of

Cordum and other evidence in the record to fashion the RFC. *See, e.g., Skeens v. Astrue*,

903 F.Supp.2d 1200 (W.D. Wash. Oct. 9, 2012) (ALJ properly relied on State agency

consultant to translate medical opinions in the record into concrete functional limitations

for purposes of disability evaluation). Further, the ALJ was not required to obtain a new

medical opinion to interpret treatment records dated after the opinion evidence. *See Boh

v. Saul*, No. 2:20-cv-00350-EJY, 2021 WL 2772554, at * 10-11 (D. Nev. July 2, 2021)

("[C]ourts in the Ninth Circuit have determined that '[t]he mere existence of medical

records post-dating a state agency physician's review does not in and of itself trigger a

duty to further develop the record.'") (citing cases).

The ALJ thoroughly discussed all of the medical records, including those dated

after the opinions of Cordum and Hodges. The post-opinion records do not establish the

existence of functional limitations different from the records preceding the opinions. The

ALJ noted that the post-opinion medical records Petitioner reported worsening back pain

due to her increased activity as the new caregiver to her granddaughter and that

Petitioner's pain medications were increased to help with her worsening pain. (AR 18-

19.) This was consistent with the prior records recording ongoing adjustments to

Petitioner's pain medications and considerations of alternative treatment options to

address Petitioner's chronic pain, which was reflected throughout the entirety of the

medical records.

Importantly, the post-opinion records continued to report that the pain medications remained effective in helping with Petitioner's pain and functioning without any intolerable side effects, which was consistently observed in the prior records. (AR 4620, 4622, 4624, 4627, 4630.) The ALJ further noted that Petitioner tried spinal injections to treat her back pain in March 2019, but the treatments were ineffective consistent with her prior unsuccessful injection treatments in 2018. (AR 18-19.)

For these reasons, the Court finds the post-opinion records did not create ambiguity or inconsistency with the record as a whole. Accordingly, the ALJ had no duty to further develop the record and did not err in making the disability determination based on the entire record before her.

For the same reasons, the ALJ did not err in declining to retain a medical expert. The Commissioner may order a consultative examination when trying to resolve an inconsistency in evidence or when the evidence is insufficient to make a determination. 20 C.F.R. §§ 404.1519a(b), 416.919a(b). Here, the ALJ considered Petitioner's request for a medical expert to review the case, but determined there was sufficient evidence in the record to make a determination. (AR 13, 53.) As discussed above, Petitioner has failed to identify any ambiguities or inadequacies in the record that the ALJ did not properly consider and address in the written decision, which is supported by substantial evidence. The ALJ therefore did not err by interpreting the evidence, including the treatment records following the opinions, and making the RFC determination without obtaining an additional medical opinion. *Boh*, 2021 WL 2772554, at *11.

3.      **RFC is Supported by Substantial Evidence**

A.      **Legal Standard**

Residual functional capacity (RFC) is "the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). The ALJ must consider all relevant evidence in the record and all of a claimant's medically determinable impairments, whether severe or not, when assessing a RFC. *See Robbins*, 466 F.3d at 883; 20 C.F.R. §§ 405.1545(a)(2) and (3), 416.945(a)(2) and (3). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Id.* at 1039-40.

A claimant's residual functional capacity is not a medical opinion, but is an issue to be decided by the ALJ. 20 C.F.R. §§ 404.1546(c), 416.946(c). The role of the ALJ is to perform a careful examination of the medical record to ascertain a claimant's disability status and ability to work. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."). However, the RFC finding must be supported by substantial evidence in the record and the ALJ

must explain his or her reasoning underlying the RFC. 42 U.S.C. § 405(b); 20 C.F.R. §§ 404.1520c, 416.920c.

**B.     Analysis**

The ALJ's RFC assessment is supported by substantial evidence. The ALJ determined Petitioner had the ability to do sedentary work with certain limitations on her ability to sit, stand, and walk; lift or carry; and other postural and environmental restrictions. (AR 16-17.) The limitations assigned are consistent with the portions of Cordum's opinion the ALJ found persuasive, and the other evidence in the record discussed by the ALJ. (AR 17-19.) Namely, the treatment provider records and Petitioner's statements demonstrating she could sit for up to six hours during a workday, stand and walk without assistance for up to two hours per day, and lift up to ten pounds at a time occasionally. The ALJ explained the reason for assigning an RFC with an exertional work level lower than opined by Cordum was due to Petitioner's complaints of pain with exertional activities, citing Petitioner's functional report and testimony. (AR 19.) This was an appropriate exercise of the ALJ's responsibility to determine credibility, resolve conflicts in the testimony, and to translate and incorporate all of the relevant evidence in the record into a succinct RFC. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *Rounds*, 807 F.3d at 1006; *Brown-Hunter*, 806 F.3d at 492.

Petitioner has not specified what additional functional limitations the record might establish that were not accounted for in the RFC assessment. Nor does Petitioner show the RFC is not supported by the record. Rather, Petitioner offers an alternative interpretation of the evidence in the record. That, however, is not a basis to remand.

Where, as here, the ALJ fashioned an RFC consistent with the record, the Court will not second guess the ALJ's reasonable interpretation of the evidence even if such evidence could give rise to inferences more favorable to Petitioner. *See Molina*, 674 F.3d at 1110.

Further, the ALJ did not improperly adopt her own lay interpretation of the medical evidence, or stray from the persuasive medical opinion evidence, to determine the RFC, as Petitioner contends. *Tackett v. Apfel*, 180 F.3d 1094, 1102-03 (9th Cir. 1999) (An ALJ may not independently assess clinical findings.). The ALJ is responsible for interpreting the evidence of record, including medical evidence, and fashioning an RFC. *Rounds*, 807 F.3d at 1006; *Andrews*, 53 F.3d at 1039. Legal error does not result where, as here, the ALJ relied on medical findings contained in the record and assessed an RFC consistent with the evidence in the record. *See e.g., Boh*, 2021 WL 2772554, at *11.

The ALJ properly evaluated all of the medical opinion evidence and assigned functional limitations based on the evidence in the record. Importantly, the ALJ explained the reasons and bases for the limitations assigned. (AR 17-19.) The ALJ's conclusions and explanations for doing so are supported by the record and a proper exercise of the AJL's responsibility to interpret the evidence of record, including medical evidence, in fashioning the RFC. *Andrews*, 53 F.3d at 1039. That the ALJ did not adopt all of the functional limitations as opined by Cordum was not error given the ALJ's explanation of the bases and reasons for the RFC limitations assigned. *Mills v. Comm'r of Soc. Sec.*, No. 2:13-CV-0899-KJN, 2014 WL 4195012, at *4 (E.D. Cal. Aug. 22, 2014) ("[I]t is the ALJ's responsibility to formulate an RFC that is based on the record as a whole, and thus the RFC need not exactly match the opinion or findings of any particular medical

source.") (citing *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989)).

## <u>ORDER</u>

Based upon the foregoing, the Court being otherwise fully advised in the premises,

IT IS HEREBY ORDERED that the Commissioner's decision finding that the Petitioner

is not disabled within the meaning of the Social Security Act is **AFFIRMED** and the

petition for review (Dkt. 1) is **DISMISSED**.

DATED: August 9, 2022

Honorable Debora K. Grasham
United States Magistrate Judge